Good morning. May it please the Court, Counsel. My name is Katherine Rich. I'm here from the District of South Dakota. The United States is asking this Court to reverse the District Court's grant of a Rule 29 motion as to Count 1 in this matter. A proper application of this Court's standard of review requires this reversal and reinstates the verdict. Here we're asking the Court to view all of the evidence in the light most favorable to the verdict, resolve the conflicts in favor of the verdict, and accept all those reasonable inferences. Our position here, as it was before the District Court, is that penetration of the victim's genital opening by the defendant's fingers was shown by the victim's testimony. She described in her testimony, Volume 2, 164-166, that the defendant was bathing her in the bathtub, bathing, quote, because he wasn't using a soap or a rag. She's a young child. She's in the bathtub, and he's using his fingers. And when he's doing that, she describes him as being focused on her vagina, and she uses that word. The victim brings that up. This occurred when she was young, but at the time of trial, she's 24 years old. She is an adult woman. So is your theory here in this argument that it's the vaginal opening, which is the genital opening, that the evidence supports in this case? Correct. Yes. That there was penetration of the vaginal opening? Yes, that by the use of the word vagina, as an adult woman, that a jury could understand that to be an internal organ, and so there must have been penetration in order to have touched an internal organ. So with that, her testimony alone would be enough for a jury to understand that that's what she meant. She describes how, now as an adult, how it felt to her when she was a child, that it gave her a weird feeling, a gross feeling. It felt like a stone in her stomach. And certainly for a small child, that's how an internal sensation would feel, and a jury is not unreasonable to understand it in that manner. Just to elaborate on that, that if it was an external touch somewhere on the legs, she certainly had the vocabulary as an adult, but also as a kid, to have used a word other than vagina, which she did here. You're saying leg? I'm saying that if it had been a touching on the leg or something. But that's not really what we're talking about here, right? It's not a leg versus the vaginal opening. Correct. Right. So our argument is that she specifically used the word vagina without prompting, and that was not brought up by the prosecutor. She used it as an adult. This is not like so many of these courts' cases where a child says something like middle or my private part. So had it been a touching of the leg, she would have said leg. But something in between leg and the vaginal opening. We're talking about the vulva area, right? Correct. So that is, I think, if we can kind of get to, I think what the district court was saying is there's just no evidence that there was any touching beyond that area to the vaginal opening, that what she was all indications, and this is, I think, what the position is, all indications were, despite the age of the victim now, that the word vagina meant something more casual and colloquial. Well, I think that's where the district court misapplied the standard of review because it's equally correct that this adult woman meant an internal organ. So what else? Help me out and understand what else is there as evidence. You've got this feels like a stone. What else evidence is it that there's touching that is actually in the vagina? So what else we have here is that as she's describing it, in the bathtub, he is using his fingers, and she specifically indicates in her testimony he's not using a washcloth. But what about penetration? I guess that's what I'm trying to get at. I understand the location. Oh, sure. So in addition to that, we have that he is commenting to her that they need to fix that she has a smelly vagina, and so that's also indicative of penetration. It's circumstantial evidence that why on a prepubescent girl would there be a concern about a smelly vagina if not for a need to fix that by cleaning out, so to speak, of the vaginal area. Now you're saying vaginal area. You're talking about the canal. Right. But she's specific. And I should have been more precise. In her testimony, she's saying the defendant said smelly vagina, that no one wants to smell that, no one wants to be near that. She didn't say vaginal area either. No, she didn't. So why don't you be precise since that's the — what did she say? She specifically said vagina. She specifically said he was the one to give us baths, and whenever he gave me a bath, every single time he would be focused on my vagina. And she never backtracked from that, which is what makes this case different than Redist. How many times did she use the term vagina? She used it that initial time that I just quoted, and then later on when the prosecutor said, so when you were being bathed by him, does this go back as long as you can remember? And then she brings it up again where that was when the — What did she say? She said when I was being bathed by him, he would say you need to make sure you clean down there because nobody wants to smell like a smelly vagina. And then she affirmed that when the prosecutor asked, you know, moving on, prosecutor asked, are there other ways he would touch you other than putting his fingers in your vagina? And then she goes on to describe other sexual touching. So she basically says it twice and then affirms it. Well, she doesn't say yes starting that last question, does she? No, she — well, she doesn't say — she goes on to describe other sexual touching. The question has two or three premises, and she doesn't say yes to the question, right? You know, the question I'm talking about. I think we're talking about the same question. The question, are there other ways he would touch you, that question? It's the one that has in in it. It ends with in, and the prosecutor, I think, uses the term vagina. She does not say yes. She describes other sexual touching. So she just goes on to substantively answer the question. But this court has said in other panels that, you know, the use of the word in is not dispositive because there's been times where a victim has said the word in, but then doesn't use a more precise medical term with it or diagram or description. And, again, normally these are child victims. So while it would be always ideal if a victim says in followed by a medical term, there's been cases where the victim used in with not matching up to a medical term or uses medical term without the word in. So neither is necessarily, you know, dispositive of conviction in those cases because it's what the evidence shows as a whole in how is a jury resolving any credibility issues and those sort of things and those inferences, which is required by this court's standard of review. So in addition to the gross, where she says it was a gross feeling, it was a weird feeling, she also describes it that it felt kind of good and that, you know, that's confusing to her because that feeling good is indicative of arousal, which can also be indicative of penetrative touching. Her subsequent behaviors to being raised in this environment is that she has this sexually precocious behavior where she's trying to replicate that feeling of being aroused even as a young child. So that also, we argue, is circumstantial evidence of penetration, which also then goes to, you know, a slightly wider set of circumstantial evidence here that this is in a house where the defendant is routinely showing these kids pornography. He is routinely touching them in other sexual ways, including on their breasts, on buttocks, on her nipples, frequently talking about bodies in an inappropriate manner for the ages that these kids were. And then, of course, we have the testimony from the older sister who described that the defendant would touch her penetrative touching of her vagina in the bathtub in the same way. How did she describe it? Do you have the exact wording from this sister as to how she described the penetration? I don't, but I will when I stand up on rebuttal. And so all of those, and then also kissing them, MD, inappropriately, all is a slightly wider set of circumstantial evidence. And then, finally, after that, even if this court is not convinced that there was actual penetration, all of that supports that the jury could have found, and it was argued to them, that there was an attempt to do so here. And the jury was charged on attempt, right? That's correct, Your Honor. Thank you. Yes. Was there a general verdict form, or did they find the actual commission versus attempt? It was a general verdict form, so this court can credit either theory. All right. I will reserve the remainder of my time. Thank you. Ms. Quinn, we'll hear from you. Good morning. May it please the Court. My name is Molly Quinn, and I represent the appellee, Victor Dominguez. We're asking the Court to affirm the district court's order granting a judgment of acquittal on Count 1 because the government failed to introduce sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, actual or attempted penetration, however slight, of the genital opening. The government elected to charge this case under an anatomically specific subsection of sexual act. That was 2246.2c. There are other subsections of the definition of sexual act, but this is the subsection the government elected to charge in this case. This Court has said that that is an anatomically specific definition of sexual act, and then the government failed to ask enough questions or present enough evidence to prove the specific act they elected to charge here. The district court on this record correctly found that the evidence presented by the government was simply too ambiguous and nonspecific to prove an act of penetration. And we believe that the district court correctly applied the standard of review for sufficiency challenges. I won't repeat the whole thing here, but I think the part that is getting missing is at the very end of kind of the common formulation is that there has to be enough evidence to allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. And I think that's what's getting lost here is that even under sufficiency review, it's not enough for the jury to say enough, for there to be enough evidence for the jury to say it could have been. The jury has to find each element beyond a reasonable doubt, even under the sufficiency review. And I'll start with MMD's testimony. Her testimony was insufficient to establish penetration of the genital opening. I know that we already talked a lot about what exactly she said, but I'll quote some of it. She said that when Dominguez was giving her a bath, he was, and the word she used was, focusing on my vagina and how to clean it properly. Admittedly, he would use his fingers. And then she described it as feeling really weird. What about the rest of that phrase where he says, I'm sorry, she says, like with just his fingers. He would use his fingers like with just his fingers. That's the whole phrase in this brief.  Do you think that means anything when it says just his fingers? I think it shows direct contact. I don't think that it gets to penetration, I guess if that's what you're asking. Yeah, kind of. Go ahead. I think it means kind of not using a washcloth. While she's describing, normally you would expect when a parent is bathing a child, I suspect that's what she means, that somebody would be using a washcloth or a rag or a sponge. That's the front part of it, would use his fingers. Why couldn't a reasonable jury say when a 24-year-old woman says that the man was focused on my vagina with just like his fingers, with like just his fingers, that that's proof beyond a reasonable doubt that he penetrated her vagina, which is an interior, you know, organ.  I think that on this record, MMD's use of the word vagina in conjunction with just his fingers is not enough to show penetration of the genital opening. She is 24 years old at the time of trial, but I think that that actually cuts the other way, that it would have been easier for the government to ask her a couple of follow-up questions. Well, obviously the government could have done a better job.  But that's not, we are where we are. Right. But I don't think that her age, I think on this record. Well, the age just shows she would be in a position to speak more knowledgeably about her body. I would say possibly, but the government didn't prove that. That the government, there's an assumption kind of from the government beginning with the closing argument that as an adult woman, as a 24-year-old woman, she knew what vagina meant, but the government didn't actually ask her that. The government didn't present evidence that she knew what vagina meant. But why can't the jury just take the ordinary meaning? I think then you get to that. The government presented evidence of a word that everyone agrees has two meanings, one of which would kind of inherently be sufficient and one of which would not. That's not enough for the government to prove their case. And the government didn't present evidence of what her definition of vagina meant, what she meant by that in the context of her testimony. They didn't ask her, they didn't have to ask her to define that word or define her parts. They could have. They didn't ask her, do you mean that his fingers went into the vaginal canal? They didn't ask other follow-up questions about the specific touching. They didn't, in many of this court's cases, not all of them, but many cases affirming kind of borderline penetration counts involve an anatomical drawing. The government could have shown her a drawing of some kind to say, what exactly did you mean? And so all we have is this free-willing word, vagina. The government is relying on appeal and competing dictionary definitions of that term, but we don't have anything. There is no evidence of what that word meant to her, that she knew it meant, you know, what educated medical adults would know. Or what she meant when she used that. And the government... And what about the next sentence where it says, really weird like there was a stone in my stomach? Right. But I think if you look at the full context of what she said, she's not describing an internal sensation. She said it would feel really weird, like I'd feel a stone in my stomach, and just kind of like a gross feeling, like this just feels wrong, but at the same time it felt kind of good. And so she immediately, before and after, described that as an emotional feeling, not an internal physical sensation. She said, I just said it, but she said weird, gross feeling, just feels wrong, and felt kind of good. Is there anything from the use of the word bathing and cleaning, just as a typical adult sort of helping a child clean, understood that this is not what a typical adult does, but to separate between a vaginal opening and just the vaginal area? No, I don't think so. Okay, so you think that the bathing could include the typical understanding of the word bathing or cleaning? You think that could include the vaginal canal? I don't think it could, unless the victim said that's how we clean that part. And what we have here is bathing and cleansing, and so I'm trying to figure out how that slots into understanding what this person meant when she said vagina. Right, and she described when he would be cleaning me, he would be focused on my vagina. She didn't say in, she didn't say, you know, he would put his fingers in and clean the inside. And then kind of related to that is the question about cleaning or the smell and what he said about having to get rid of the smell. I still were in the same boat there. I think that we still don't have evidence of what she meant by that, and we don't have evidence of what in this family it meant to clean the vagina, whether that was an external thing or whether that was an internal thing. I think the common understanding of that would be external. We don't, and she and her, she said that he said, you need to make sure you clean down there. Yes, because nobody wants to smell like a smelly vagina. So the phrase that she used, she used vagina, excuse me, but she also said down there, which is much less specific. Counsel, in state court, in these kind of cases, they typically resort to credibility. No one knows how she said the word vagina. No one knows this. No one knows that. Do you think that's an element in this case or not? I realize that that wasn't really briefed by you on either side. I don't think. The bigger aspects of this case that I think the defense would believe are credibility, and that was kind of the theme of the closing argument. But on this specific question, she said what she said. The government presented the evidence of what that meant or didn't mean to her, or the government called two expert witnesses and didn't ask either one of them questions about what vagina or vulva or any other words that might matter in this case mean. And so, no, I guess I don't think it's a credibility issue in the sense that we traditionally think of competing credibilities, and the jury is, you know, we defer to the jury on that. But we really, it's not an evidentiary conflict, really, is the way that I've been thinking of it. People say these words differently is the only reason I say that. Some are hesitant to even say these words. And so that's the only thing I was driving at. But we won't go there. We have the transcript. There's no video of any of this, right? No, there's not, and we don't. I assumed. And proceed with your argument. I was just going to add that there are cases where it doesn't work for the government, but I think it was in the Redis case where the government tried an oral argument to say, well, she did kind of a hand gesture. We don't even have anything like that here. Of course, in that case, she admitted at one point there was no penetration. Right. As you're aware, he just touched the outside of your vagina, and she answers yes to the question, the victim. Right. She also used the word in and hold, so I think. Correct. Very consistent there. Right. I think. And something else I'll ask is, does the record reflect the gender composition of the jury? I didn't see it in any of the briefs. You know, I. Okay. Proceed. I can't answer that, and I don't think that because this was a Rule 29 issue only, I don't even recall that we have the Vaudeir transcript. Okay. Proceed. I do. I'd like to talk about. I'll talk about the circumstantial evidence. I think. Or I'm not sure if this is circumstantial evidence. But the question by the prosecutor, just to reiterate, the jury was clearly instructed. The prosecutor's question is not evidence. And I think that that concept extends to the idea that an adult woman knows what vagina means. That's not an evidence. That's the prosecutor's assertion at closing argument. And that we all know what vagina means. That's also an assertion by the prosecutor at closing argument. That's not evidence. Another random question. Does the record reflect. They keep saying. The record does say she was a school teacher. Does it say what she taught? I believe she taught fourth grade. And she described kind of the series of subjects. I did look at that. I think she said. That's fine. Fourth grade is fine. I think she said science. But we don't. I was thinking about that. That we still don't know that in fourth grade. I know. They're teaching children these anatomical terms. Thank you very much. So that she would know that. And I would just reiterate that question by the prosecutor. She, MMD, did not affirm or deny either way. And so I don't think that that question helps the government get over the hurdle of sufficient evidence here. And the government has also relied on, as we refer to it, MMD's sexualized behavior. Or as she described it, humping. And I don't think that that helps the government prove penetration of the vaginal opening. She's describing an external simulation or an external feeling, not an internal feeling. And she didn't. It would be different if she had testified. I would place things in my vagina to try to get the same feeling I got when he cleaned me. And she did say that she was trying to get that same feeling he got when he cleaned her. Which I think means that this humping evidence actually undercuts or goes the other way on any inferences that you might be able to draw from what she meant. By he would be focused on my vagina. And I think I also talked about this in the brief. But the older sister, CBC's testimony the government used to try to help prove the penetration count here. She was much more specific about what body parts she was talking about. She said that Dominguez would put a cream in her vagina. She was asked what that meant. And then she did not describe penetration of the vaginal canal. She described around like my clit and like that area. Yeah, just down there. And then she described a different act of abuse that involved kind of clear insertion. She said she felt something insert into me and described it like my whole inside part. So I think that that evidence undercuts any inference that you can get on this record of the word vagina, meaning penetration of the vaginal canal. And I'll move to the government's attempt theory. The government presented insufficient evidence of an attempted sexual act. Attempt, of course, requires specific intent and a substantial step. Here there was no evidence of specific intent, essentially no evidence of intent to proceed beyond the type of touching that she had already described. And she said that this happened every single time. She described the same type of abuse every single time. And nothing stopped. She didn't describe anything that would stop him from moving on to proceeding to what we would define as a sexual act. And she didn't testify about any later acts of penetration. What she testified to was once she turned about 11, her mom said, you need to be taking showers, and this bathtub touching stopped, and then it moved on to the more traditional sexual contact type of touching that the government had several counts of. And so this conduct, even though the touching might have been close to the vaginal opening, this is a conduct that's so unequivocal that it shows that his conduct was calculated to bring about penetration or an actual sexual act. And I think to put it maybe crudely, close enough on this record isn't enough, that the touching may be on a different record a substantial step, but on these facts it doesn't show an intent to do anything beyond what she described he did every single time. And I think under the government's theory, or the way the government has described it, essentially every sexual contact that happened through the clothing would be an attempted sexual act. So I think the district court correctly found that there was no insufficient evidence of an attempted sexual act. I think just to wrap up, the district court repeatedly, on this record, carefully articulated the standard of review, listened to the evidence, got a transcript of MMD's testimony, both for the in-court ruling or reserving ruling and the written ruling, considered the party's arguments, and this court's case law incorrectly found that there was insufficient evidence for a reasonable jury to find, beyond a reasonable doubt, penetration of the genital opening. So we would ask the court to affirm and allow the district court to proceed to sentencing on the remaining seven counts. Thank you. Unless there's further questions, I'll just... Very well. Thank you for your argument. Thank you. Hello. We'll hear rebuttal. Thank you, Your Honor. So this Court has not actually ruled that this subsection is anatomically specific in the way that other subsections of 2246 are. It uses genital opening. It doesn't use vulva, penis, anus, that have specific medical terms, the way that those other subsections do. So that's a misstatement of this Court's case law. Next, I just want to point out that all of these arguments were argued to the jury during closing. So the jury certainly did get to resolve any issues of credibility in how they were gauging M.D.'s testimony when she said the word vagina, whether or not she had an understanding of what that meant. The record does reflect she's a fourth-grade classroom teacher, which means she's a mandatory reporter. So we have to... I mean, I think that goes to showing that she knew, could know what some of those, the use of the word vagina meant. Did the jury hear she was a mandatory reporter and what mandatory reporting meant? They did not, no. I assume not. That's the reason I ask. Yeah. If the prosecutor had asked those questions and forgot to ask about penetration, that would be quite a record. Yes, it would. But I think the problem here is that there's a substitution by the district court of one possible meaning of vagina, basically suggesting, well, she could have meant this, for an equally acceptable meaning. When you look at those two meanings, is the district court permitted to look at all of the other circumstances surrounding it? In other words, how the abuse was described and the use of the terminology elsewhere in the trial? Can the district court look at that? This court has said yes, that penetration and those things can be proven by circumstantial evidence. So it's not just one or the other. You have to look at it in the context of how this person was using it and what other testimony they gave that might give us an insight into that. That's correct, and the district court failed to do so. The district court looked very narrowly at just this one small portion of her testimony and nothing else and didn't note it. Which small portion? Just the specific quote that I had earlier about the— On page 164 of her testimony where she said that he would always be focused on my vagina and how to clean it. Saying that's the part the judge focused on. That's all the district court used in coming to its conclusion. And the other part that you think she should have focused on is what? The entirety of MD's testimony as well as the entirety of the evidence in the trial. Because the district court disregarded the attempt argument in a footnote relying on foolbear, which is factually distinguishable here. So should not have disregarded the attempt argument because the only evidence, all that existed for a substantial step was a different sexual act. And it was also the first incident in time. It wasn't surrounded by this additional abuse occurring in the household, sexual and otherwise. And so that was another misstep by the district court here. I also just want to point out that there was no evidence that— the defense says we don't know what this victim meant when she used the word vagina. But there was equally no evidence that she did not know what vagina meant. And that is the part where a proper application of this court's standard of review is that you have to resolve that in favor of the jury's verdict. Because basically the district court's ruling says here that no jury, no jury could have found rationally that evidence established beyond a reasonable doubt of penetration based on this record. And the jury could have based on the testimony and then additionally based on the circumstantial evidence surrounding and then certainly the attempt argument. So we'd ask this court to reverse. Thank you. Very well. The case is submitted and the court will file a decision in due course. Thank you to both counsel. That concludes the argument session for this morning. The court will be in recess until 9 o'clock tomorrow. Thank you.